IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAWN LALUMERA,** : | |
|         **Plaintiff,** : | |
| : | |
|     **v.** : | Civ. No. 12-929 |
| : | |
| **2491 CORP.** : | |
| **d/b/a NIFTY FIFTY'S, et al.,** : | |
|         **Defendants.** : | |
| : | |

**Diamond, J.**                                                                                                                                             **August 27, 2012**

## MEMORANDUM

In this employment discrimination case, both employee and employer seek hearing transcripts and related filings from the Pennsylvania Department of Labor and Industry respecting the employee's unemployment compensation claim. *(Doc. No. 20-1.)* Until recently, the DOL regularly acceded to such third party discovery requests. Relying on recently-enacted Pennsylvania law, however, the DOL argues that the materials sought here are "privileged." I do not agree, and will order the DOL to produce the materials.

I.     PROCEDURAL HISTORY

Plaintiff Dawn Lalumera alleges that Defendants 2491 Corp. and Stephen Washington—her former employer and supervisor—violated Title VII of the Civil Rights Act of 1964 and the Family Medical Leave Act. *(Doc. No. 1 ¶¶ 26–45)*; 26 U.S.C. § 2601–54; 42 U.S.C. § 2000e. Both Plaintiff and Defendants subpoenaed from the DOL documents related to the claim Plaintiff filed for unemployment compensation after she left 2491 Corp.'s employ. The DOL—through its Unemployment Compensation Board of Review—objected to the subpoena and Plaintiff moved to compel. *(Doc. No. 20.)* The Board has responded to the Motion and Plaintiff has

replied.  *(Doc. Nos. 23–25.)*

II.     LEGAL STANDARDS

    A.     *Discovery*

The parties to a federal civil suit "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501," which provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000); Fed. R. Evid. 501.

Because Plaintiff's claims are exclusively federal, I must apply the federal common law of privilege.  Fed. R. Evid. 501; see Pearson, 211 F.3d at 66.

    B.     *Law of Privilege*

Whether to recognize a new federal privilege "should be determined on a case-by-case basis."  Pearson, 211 F.3d at 66 (quoting Jaffee v. Redmond, 518 U.S. 1, 9 (1996) (recognizing psychotherapist-patient privilege under Rule 501)).  I must consider whether a proposed privilege "promotes sufficiently important interests to outweigh the need for probative evidence."  Id. at 67 (quoting Trammel v. United States, 445 U.S. 40, 47 (1980)).  Federal courts

are loath to recognize new privileges, which are antithetical to the search for truth.  Univ. of Pa. v. EEOC, 493 U.S. 182, 189 (1990) ("[P]rivileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence,'" (citing Trammel, 445 U.S. at 50)).  Joining numerous courts, The Third Circuit has cautioned that

> considerations against the recognition of new privileges that would impede access to probative evidence are granted very significant weight . . . . [O]nly the most compelling candidates will overcome the law's weighty dependence on the availability of relevant evidence.

Pearson, 211 F.3d at 67 (citing Jaffee, 518 U.S. at 9); see also Univ. of Pa., 493 U.S. at 189 (declining to recognize academic peer review privilege); United States v. Nixon, 418 U.S. 683, 710 (1974) (cautioning that privileges "are not lightly created nor expansively construed"); In re Sealed Case, 148 F.3d 1073, 1079 (D.C. Cir. 1998) (declining to adopt "protective function" privilege requested by the Secret Service); In re Grand Jury, 103 F.3d 1140, 1149 (3d Cir. 1997) (cautioning that "privileges are disfavored," rejecting parent-child privilege); Carman v. McDonnell Douglas Corp., 114 F.3d 790, 794 (8th Cir. 1997) (rejecting a corporate ombudsman privilege, stating, "[t]he creation of a wholly new evidentiary privilege is a big step"); Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1514 (D.C. Cir. 1993) ("Federal courts have never recognized an insured-insurer privilege as such."); United States v. Holmes, 594 F.2d 1167 (8th Cir. 1979) (declining to recognize probation officer privilege).

Once a state recognizes a privilege, however, "[c]onsiderations of comity" require federal courts also to consider recognizing that privilege.  Pearson, 211 F.3d at 67, 69.

III.   DISCUSSION

The Board bases its privilege claim on the February 12, 2011 amendment to the

regulations implementing Pennsylvania's Unemployment Compensation Law.  34 Pa. Code § 61.25; 43 Pa. Stat. §§ 751–916.  The amendments provide, *inter alia*, that unemployment compensation information is "confidential," and prohibit the DOL from disclosing such information except in limited circumstances, including: (1) "[t]o a claimant, [or] the last employer of the claimant, . . . to the extent necessary for the proper determination of the claimant's application for benefits and claims for compensation"; or (2) "[a]s permitted by provisions of the law or as required or permitted by Federal law."  34 Pa. Code. § 61.25(a)(2)(i), (a)(3)(ii), (a)(3)(vi).

Pennsylvania enacted these amendments in response to recent changes to federal regulations implementing the Social Security Act and the Federal Unemployment Tax Act.  See 20 C.F.R. § 603; 26 U.S.C. §§ 3301–11; 42 U.S.C. §§ 301–1397.  If it is to receive federal funds, the DOL must enact "provision[s] for maintaining the confidentiality of any U[nemployment] C[ompensation] information which reveals the name or any identifying particular about any individual or any past or present employer or employing unit."  Id. § 603.4(b).  Exceptions to this federal confidentiality requirement include:

> Disclosure for non-UC purposes, of confidential UC information about an individual to that individual, or of confidential UC information about an employer to that employer,
> . . . . [And]
> Disclosure of confidential UC information in response to a court order or to an official with subpoena authority . . . as specified in § 603.7(b).

Id. § 603.5(c),(h).  The federal regulations require the state agency, before disclosing UC information in the course of discovery, to "file and diligently pursue a motion to quash the subpoena or other compulsory process."  Id. § 603.7(a).  It appears that these federal confidentiality provisions were adopted to help prevent identity theft.  Confidentiality and

Disclosure of State UC Information, 71 Fed. Reg. 56,830 (Sep. 27, 2006).

The Board urges me to recognize a federal privilege based on the new Pennsylvania regulations: (1) to bring Pennsylvania UC privacy protections into compliance with federal requirements; (2) to encourage candor during UC proceedings; and (3) to keep UC proceedings simple and efficient. *(Doc. No. 24 at 10–12.)* Yet, the disclosure sought here is not at odds with these concerns. As I have discussed, Pennsylvania's regulations are broader than their federal counterparts, which would allow disclosure of UC materials to Ms. Lalumera and 2491 Corp. The federal government has thus apparently concluded that disclosure of UC materials to the parties that participated in the unemployment compensation proceeding would not discourage candor during that proceeding. Moreover, allowing the UC claimants and their former employers access to UC materials will not impair the efficiency of administrative proceedings. Once again, until the 2011 amendments, the DOL commonly produced these materials to claimants and employers—who, in turn, presented them to this Court in seeking or opposing summary judgment (as the Parties apparently intend to do here). Indeed, Plaintiff argues—without the Board's disagreement—that for "the last ten years, the DOL charged a flat fee of $100 for all subpoenas of such records." *(Doc. No. 25 at 8.)* Accordingly, allowing the disclosure both Parties seek here would not "have the unintended result of formalizing and lengthening [administrative] proceedings." *(Doc. No. 24 at 11.)*

Although it has "diligently pursue[d]" its objection to Plaintiff's subpoena, the Board has not presented a persuasive reason to recognize a new privilege. 20 C.F.R. § 603.7(a). In <u>Pearson v. Miller</u>, the Third Circuit declined to recognize a state law-based privilege in circumstances similar to those presented here. 211 F.3d 57, 65 (3d Cir. 2000). Ms. Pearson brought federal and state law claims against a foster care agency and associated private contractor for the sexual

assault of her minor daughter by Bruce Miller, a foster child whom these organizations were supervising. Ms. Pearson believed the organizations' records would show that they "had knowledge of Mr. Miller's violent sexual propensities." Id. at 61. Miller authorized the release of the records. Citing three Pennsylvania statutes requiring that juvenile and mental health records be kept confidential, the organizations argued that the materials were privileged. Pearson, 211 F.3d at 60–62; Child Protective Services Law, 23 Pa. Cons. Stat. § 6301–86; Juvenile Act, 42 Pa. Cons. Stat. § 6301–505; Mental Health Procedures Act, 50 Pa. Cons. Stat. § 7101–503. The Third Circuit declined to recognize a federal privilege based on these state law confidentiality requirements. Insofar as Ms. Pearson's discovery request raised legitimate privacy concerns, the Court believed that these were properly addressed in a Rule 26(c) protective order. Pearson, 211 F.3d at 70, 72.

Pearson is especially instructive here. As in Pearson, "the primary holder[s] of interests in confidentiality" (i.e. Plaintiff and her former employer) do not oppose disclosure of the UC information. 211 F.3d at 72. Because, in the words of the Pearson Court, the "primary interests" in confidentiality have thus been "taken off the table," I must look to what other concerns might support recognition of a privilege. Id. at 70. As I have discussed, the Board has identified none.

At least one Court has rejected two of the arguments urged by the Board. In EEOC v. Illinois Department of Employment Security, the state of Illinois refused to provide UC materials to the Equal Employment Opportunity Commission, claiming a state law-based privilege. 995 F.2d 106, 107 (7th Cir. 1993). The Seventh Circuit declined to recognize an "unemployment insurance privilege," rejecting the rationales of candor and efficiency that the Board urges here. The Court reasoned that the "secrecy" urged by the state was as likely to compromise candor as to encourage it. Id. at 108. Nor was the Court persuaded that the "administrative convenience"

outweighed the EEOC's need for the evidence. Id.

The Seventh Circuit's reasoning is equally persuasive here. I do not see how disclosing UC documents to the parties that participated in the UC proceeding could possibly compromise privacy, candor, or administrative efficiency. The documents sought are certainly material to this employment discrimination case, as they bear on the reasons for Plaintiff's purported termination and her resulting loss of income.

Moreover, as the Third Circuit has discussed, the privilege the Board proposes is not the type customarily recognized in federal court. Rather, privileges "are ordinarily found in bilateral confidential relations: attorney-client, husband-wife, clergy-communicator, . . . psychotherapist-patient . . . ." Id. at 71. The Board proposes a privilege held by the state on behalf of those who have the primary interest in confidentiality—an arrangement the Pearson Court deemed "a poor fit for the framework of Rule 501." Id. As that Court explained, the criminal informant's privilege alone may be asserted by a third party (i.e. the prosecution). Id. at 71–72 n.16. Courts have otherwise refused to adopt third party privileges as unworkable and uncertain. In re Sealed Case, 148 F.3d at 1077 (efficacy of proposed "protective service" privilege undermined because it would be vested in the Secretary of the Treasury rather than the party whose conduct was to be influenced—the President); In re Grand Jury, 103 F.3d at 1153 (noting problems that would result if parent could assert or waive privilege created for benefit of child); see also Jaffee, 518 U.S. at 18 ("An uncertain privilege . . . is little better than no privilege at all.").

The only contrary decisions I can find are not apposite. For instance, seventeen years before the Seventh Circuit's decision in EEOC, the Sixth Circuit in Herman Bros. Pet Supply, Inc. v. NLRB applied Illinois' UC confidentiality requirements. 360 F.2d 176, 179–80 (6th Cir. 1966). As the Seventh Circuit explained, however, Herman Bros. predates Rule 501 and the

Supreme Court's statement that it was not inclined to expand its authority under Rule 501. EEOC v. Ill. Dep't, 995 F.2d at 109 ("The sixth circuit [in Herman Bros.] assumed that state privileges apply in federal litigation.  That assumption is no longer warranted." (quoting Univ. of Pa. v. EEOC, 493 U.S. 182, 189 (1990))); Matter of Grand Jury Impaneled January 21, 1975, 541 F.2d 373, 380–81 (3d Cir. 1976) (same); see also United States v. Cartledge, 928 F.2d 93, 96 (4th Cir. 1991) (applying balancing test at odds with Third Circuit's analysis in Pearson); Powell v. Town of Sharpsburg, Civ. No. 06-117, 2009 WL 863348 (E.D.N.C. March 27, 2009) (relying on Cartledge, recognizing North Carolina UC privilege under Rule 501); Hartsell v. Duplex Prods., Inc., 895 F. Supp. 100 (W.D.N.C. 1995) (same).

In sum, the authority the Board offers is inapposite and unpersuasive.  Apposite authority weighs heavily against recognizing the privilege the Board urges.

IV.   CONCLUSION

Allowing a state agency to withhold UC materials even where the claimant and employer have authorized disclosure does not promote "sufficiently important interests to outweigh the need for probative evidence."   Trammel, 445 U.S. at 47.   Accordingly, in the limited circumstances presented here, I will decline to recognize an "unemployment insurance privilege" under Rule 501.

I have not addressed whether a privilege might apply if a party that did not participate in the administrative proceedings sought UC materials, or if the claimant or employer objected to their disclosure.  Nor have I made "a determination that the unhindered release of the information here in dispute is appropriate." Pearson, 211 F.3d at 72.  Before the Board produces the requested information, the Parties shall, in consultation with the Board, determine whether a protective order is necessary and, if so, jointly propose such an order.  See Fed. R. Civ. P. 26(c); Pearson, 211 F.3d at 72–73.

For the foregoing reasons, Plaintiff's Motion to Compel is **GRANTED**.

An appropriate Order follows.

/s/ Paul S. Diamond
_____

Paul S. Diamond, J.